UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LEANDRA PINO,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 13-cv-05022 BHS<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: February 14, 2014 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 12, 13, 14).

After considering and reviewing the record, the Court finds that the ALJ erred in her review of the medical evidence. She failed to provide specific and legitimate reasons for her failure to credit fully the opinions from an examining doctor and provided her

own interpretation of the mental status examination and psychological assessment by the examining physician. Dr. Raney opined that plaintiff suffered from borderline personality disorder with anti-social traits which caused distractions to plaintiff such that plaintiff could not perform even simple and repetitive tasks on a consistent basis without special or additional instructions (*see* Tr. 286). Therefore, the error in the evaluation of Dr. Raney's opinion is not harmless error.

As a result, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

BACKGROUND

Plaintiff, LEANDRA PINO, was born in 1980 and was 20 years old on the alleged date of disability onset of April 27, 2000 (*see* Tr. 164-66). Plaintiff was in special education classes and attended up to the tenth grade in high school (Tr. 42-43). Plaintiff worked at a food bank for about six months in 2008 and according to plaintiff, "Welfare basically pulled me out and told me to go apply for my SSI" (Tr. 45). She does some babysitting for family, sometimes for pay, sometimes for free (Tr. 45-46).

Plaintiff has at least the severe impairments of "obesity; lumbar degenerative disc disease; venous insufficiency in the lower extremities; right wrist neuropathy; depression; borderline intellectual functioning; panic disorder; [and] borderline personality disorder with antisocial traits (20 CFR 416.920(c))" (Tr. 16).

At the time of the hearing, plaintiff was living in a house with her four children (Tr. 40-41).

## PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act on April 10, 2009 (*see* Tr. 164-66). The application was denied initially and following reconsideration (Tr. 84-87, 91-96). Plaintiff's requested hearing was held before Administrative Law Judge Mattie Harvin-Woode ("the ALJ") on January 6, 2011 (*see* Tr. 36-79). On March 22, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.13-25).

On November 13, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in January, 2013 (*see* ECF No. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on March 18, 2013 (*see* ECF Nos. 9, 10).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ gave sufficient reasons for rejecting the opinion of consultative examiner, James Raney, M.D.; (2) Whether or not the ALJ properly considered the opinions of the state agency medical consultants; and (3) Whether or not the ALJ gave clear and convincing reasons for finding that plaintiff was not credible (*see* ECF No. 12, pp. 1-2).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

the fifth and final step of the sequential disability evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that

which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009).

# DISCUSSION

## (1) Whether or not the ALJ gave sufficient reasons for rejecting the opinion of consultative examiner, James O. Raney, M.D.

Plaintiff contends that the ALJ failed to evaluate properly the medical opinion of Dr. Raney. Defendant contends that Dr. Raney's opinion was evaluated properly. According to the Ninth Circuit, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting*

*Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

Dr. James Raney, M.D. examined plaintiff on June 24, 2009 (*see* Tr. 283-86). He reviewed records from Dr. Keith Krueger, Ph.D. from May 28, 2003, and noted that they were incomplete, but recorded a significant drug history (*see* Tr. 283). Dr. Raney took a detailed history, noting plaintiff's subjective report of long-term depression, manifesting as "frequently moody and grumpy, constant fatigue, suicidal and self mutilation with cutting and amateur tattoos" (*see id.*). He also noted plaintiff's report of general anxiety, panic attacks; with shortness of breath, sweating, weeping, racing heart and pain (*see* Tr. 283-84).

Dr. Raney assessed that plaintiff's "history suggests neglect and abuse" (*see* Tr. 284). This assessment is supported by Dr. Raney's note that plaintiff's "mother was 'into drugs and alcohol,' [and] she started 'weed' at 12" (*see id.*). Dr. Raney indicated a critical eye towards plaintiff's subjective reports, as he noted that she "used methamphetamine for a year since 14," but also noted that "her record (2003) notes that she said she used it for 2 ½ years" (*see id.*).

Dr. Raney conducted a detailed mental status examination, noting, for example, his observations of plaintiff's speech, which was "rapid with limited prosody," and her slightly wary demeanor (*see id.*). Dr. Raney diagnosed plaintiff with depressive disorder, NOS; panic disorder without agoraphobia; borderline personality disorder with antisocial traits, among other diagnoses (*see id.*). Dr. Raney rated plaintiff's global assessment of functioning ("GAF") at 60, noting "moderate symptoms" (*see id.*). Although Dr. Raney

indicated his prognosis for improvement with plaintiff's Axis I disorders of depressive and panic disorder, he indicated no such prognosis with respect to her Axis II diagnosis of borderline personality disorder with antisocial traits (*see* Tr. 285-86).

Dr. Raney included specific assessment and medical source opinions regarding plaintiff's ability to conduct work activities (*see* Tr. 286). Due to her distractions from her Axis II diagnosis of borderline personality disorder with antisocial traits, Dr. Raney indicated his opinion that these particular symptoms would inhibit plaintiff's "ability to perform simple and repetitive tasks," and would result in plaintiff's inability to "perform work activities on a consistent basis without special or additional instruction" (*see id.*).

The ALJ failed to credit fully opinions from Dr. Raney with the following discussion:

> Consultative examiner James Raney, M.D., examined the claimant in June of 2009 and diagnosed her mental conditions as including a depressive disorder, panic disorder, and borderline personality disorder with antisocial traits with a GAF of 60. (internal citation to Ex. 2F/3). A GAF of 51-60 is indicative of no more than "moderate symptoms" according to the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV)*. Dr. Raney stated that the claimant's depression and panic disorder could significantly improve within twelve months with adequate treatment. (internal citation to Ex. 2F/4). He also opined that the claimant was able to manage her funds, interact appropriately with supervisors, coworkers and the public, and maintain regular attendance. He opined that the claimant could deal with the "usual stress encountered in a competitive work." Furthermore, he opined that the claimant's personality disorder would be distracting and would therefore impair her ability to work without special or additional instruction, but then also stated that the claimant would not even be able to perform simple repetitive tasks due to these distractions. These statements are inconsistent. Furthermore, the state agency medical consultant, who had the opportunity to review the entire record, had opined upon reconsideration that the claimant could not work with the public because of her mental impairments, which

> contradicts Dr. Raney's opinion. The undersigned has found that the claimant could have minimal interaction with the public, as will be discussed in the residual functional capacity. The undersigned has given no weight to Dr. Raney's opinion that the claimant cannot work because her personality disorder is "distracting." Dr. Raney only examined the claimant once and his report does not include information that would support the severity of such a limitation. Moreover, the claimant was not on her medication at that time. Presumably, she would function better if she were on her medications.

(Tr. 19).

First, although the ALJ found an inconsistency between some of Dr. Raney's opinions, Dr. Raney's opinions are not necessarily inconsistent. Simply because Dr. Raney opined that plaintiff could perform some functional work tasks, and could maintain regular attendance and deal with stress does not invalidate his opinion that her borderline personality disorder with antisocial traits would result in limitations preventing her from being able to perform even simple and repetitive tasks on a consistent basis without special or additional instruction (*see* Tr. 283-86).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a

conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

When an ALJ seeks to discredit a medical opinion, he must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the

lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

Here, based on the relevant record, the Court concludes that the ALJ did not adequately explain why her interpretation of Dr. Raney's MSE results is more correct that the interpretation of Dr. Raney, who conducted the MSE.

Secondly, the ALJ fails to credit fully Dr. Raney's opinion in part because it is a contradicted opinion (*see* Tr. 19). However, as noted previously, even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews*, 53 F.3d at 1043). The fact that a medical opinion by an examining doctor is contradicted only directs the standard by which the opinion can be rejected: it is not a reason to reject the opinion. *See id.*

The Court also notes that the ALJ implies that he gives greater weight to the opinion of the state agency consultant, who did not examine plaintiff, over the opinion of Dr. Raney, who examined plaintiff because the consultant "had the opportunity to review the entire record" (*see* Tr. 19). However, this suggests a misapplication of the relevant standard. According to the relevant federal regulation and Ninth Circuit case law, an examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific,

*legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831).

Next, the ALJ indicates that Dr. Raney only examined plaintiff on one occasion and his "report does not include information that would support the severity of such a limitation" (*see* Tr. 19). However, as discussed, Dr. Raney reviewed plaintiff's medical records; noted her history; made independent observations and conducted a MSE (*see* Tr. 283-86).

Dr. Raney's report includes his assessment that plaintiff's "history suggests neglect and abuse;" that she started drug use in her teens and pre-teen years; was "quite obese," had rapid speech with limited prosody and slightly wary demeanor (*see* Tr. 284). Dr. Raney also assessed plaintiff's mood as somewhat flat and her affect as slightly insouciant (*see* Tr. 285). He noted her resistance to multiple lines of questioning, such as calculations and interpreting proverbs (*see id.*). Among other opinions, Dr. Raney opined that plaintiff suffered from borderline personality disorder with anti-social traits which caused sufficient distractions to plaintiff to eliminate her ability to perform even simple and repetitive tasks on a consistent basis without special or additional instructions (*see* Tr. 286).

Based on the relevant record, the Court concludes that the ALJ's finding that Dr. Raney did not include information that would support the severity of his opined limitations is not a finding based on substantial evidence in the record as a whole. The ALJ has not explained why her interpretation of Dr. Raney's report and clinical observations is more correct than the interpretation of Dr. Raney.

The final reason provided by the ALJ for his failure to credit fully the opinion of Dr. Raney was that plaintiff "presumably [] would function better if she were on her medications" (*see id.*). However the ALJ's decision must be supported by substantial evidence in the record, not based on presumptions. Although an ALJ may "draw inferences logically flowing from the evidence," *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)), an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

For the stated reasons, the Court concludes that the ALJ failed to provide specific and legitimate reasons for her failure to credit fully opinions from Dr. Raney. The Court also concludes that this is not harmless error.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Court noted multiple instances of the application of these principles. *Id.* (collecting cases). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability

determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Here, among other opinions, Dr. Raney opined that plaintiff suffered from borderline personality disorder with anti-social traits which caused sufficient distractions to plaintiff to eliminate her ability to perform even simple and repetitive tasks on a consistent basis without special or additional instructions (*see* Tr. 286). Had this opinion been credited fully, plaintiff's residual functional capacity would have been assessed differently, affecting the ultimate determination regarding disability in this matter. Hence, the ALJ's error in the evaluation of Dr. Raney is not harmless error. For this reasons, the Court concludes that this matter should be reversed and remanded.

**(2) Whether or not the ALJ properly considered the opinions of the state agency medical consultants.**

According to Social Security Ruling 96-6p, state agency medical consultants, while not examining doctors, "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 1996 LEXIS 3 at *4. Therefore, regarding state agency medical consultants, the ALJ is "required to consider as opinion evidence" their findings, and also is "required to explain in h[er] decision the weight given to such opinions." *Sawyer v. Astrue*, 303 Fed. Appx. 453, *455, 2008 U.S. App. LEXIS 27247 at **2-**3 (9th Cir. 2008) (*citing* 20

C.F.R. § 416.927(f)(2)(i)-(ii); SSR 96-6p, 1996 SSR LEXIS 3, *5) (memorandum opinion) (unpublished opinion). According to Social Security Ruling (hereinafter "SSR") 96-6p, "[a]dministrative law judges . . . . may not ignore the[] opinions [of state agency medical and psychological consultants] and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 SSR LEXIS 3, 1996 WL 374180 at *2. This ruling also provides that "the administrative law judge or Appeals Council must consider and evaluate any assessment of the individual's RFC by State agency medical or psychological consultants," and said assessments "are to be considered and addressed in the decision." *Id.* at *10.

Despite these Social Security Rulings, federal regulations and Ninth Circuit case law, the ALJ here failed to discuss the opinion of state agency medical consultants, Dr. Cynthia Collingwood Ph.D. and Dr. Thomas Clifford, Ph.D. This is legal error.

Plaintiff complains that this is not harmless error as Dr. Collingwood provided opinions regarding specific limitations on plaintiff's ability to work that were not included in plaintiff's RFC, such as her opinion that plaintiff would have "occasional interruption from psychiatric symptoms" and only could work with a few co-workers (*see* Tr. 304).

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20. Although "Social Security Rulings do not have the force of law, [n]evertheless, they

constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988); *Paulson v. Bowen*, 836 F.2d 1249, 1252 n.2 (9th cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356) (footnote omitted).

Thus, the ALJ's error in failing to discuss the opinions of Dr. Collingwood affected plaintiff's RFC. Because the Court already has concluded that this matter must be remanded due to the ALJ's error in the evaluation of the medical opinion from Dr. Raney, plaintiff's RFC should be evaluated anew, as should the remainder of the sequential disability evaluation process. Therefore, the Court will not discuss defendant's argument that, in the context of the jobs identified at step five in the ALJ's written decision, the ALJ's error in failing to discuss the opinion from Dr. Collingwood is harmless error: It is legal error and should be corrected following remand of this matter. Step five should be evaluated anew, if that step again is reached during the sequential disability evaluation process.

**(3) Whether or not the ALJ gave clear and convincing reasons for finding plaintiff was not credible.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration,

*see supra*, section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

### (4) Whether this matter should be reversed and remanded for further consideration or for a direct award of benefits.

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir.

1988)). Although the ALJ erred in his review of the medical evidence, the medical evidence is contradicted and contains conflicts.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

CONCLUSION

The ALJ failed to evaluate properly the medical opinion of Dr. Raney, requiring that this matter be reversed and remanded for further consideration of the medical evidence. The opinions from state agency medical consultants should be discussed explicitly as well following remand of this matter.

Because of the errors in the review of the medical evidence, plaintiff's credibility, and the remainder of the sequential disability evaluation process, should be evaluated anew, as necessary.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 14, 2014, as noted in the caption.

Dated this 24th day of January, 2014.

J. Richard Creatura
United States Magistrate Judge